FILED
11-24-2025
Clerk of Circuit Court
Waukesha County
2025CV002250

**STATE OF WISCONSIN**  |  **CIRCUIT COURT**  |  **WAUKESHA**

Annette Kuglitsch et al vs. Douglas Haag

**Electronic Filing Notice**

Case No. 2025CV002250

Class Code: Unclassified

DOUGLAS HAAG
5015 S 14TH ST APT 4
MILWAUKEE WI 53221

Case number 2025CV002250 was electronically filed with/converted by the Waukesha County Circuit Court office. The electronic filing system is designed to allow for fast, reliable exchange of documents in court cases.

Parties who register as electronic parties can file, receive and view documents online through the court electronic filing website. A document filed electronically has the same legal effect as a document filed by traditional means. Electronic parties are responsible for serving non-electronic parties by traditional means.

You may also register as an electronic party by following the instructions found at **http://efiling.wicourts.gov/** and may withdraw as an electronic party at any time. There is a fee to register as an electronic party. This fee may be waived if you file a Petition for Waiver of Fees and Costs Affidavit of Indigency (CV-410A) and the court finds you are indigent under §814.29, Wisconsin Statutes.

If you are not represented by an attorney and would like to register an electronic party, you will need to enter the following code on the eFiling website while opting in as an electronic party.

**Pro Se opt-in code: 49c62f**

Unless you register as an electronic party, you will be served with traditional paper documents by other parties and by the court. You must file and serve traditional paper documents.

Registration is available to attorneys, self-represented individuals, and filing agents who are authorized under Wis. Stat. 799.06(2). A user must register as an individual, not as a law firm, agency, corporation, or other group. Non-attorney individuals representing the interests of a business, such as garnishees, must file by traditional means or through an attorney or filing agent. More information about who may participate in electronic filing is found on the court website.

If you have questions regarding this notice, please contact the Clerk of Circuit Court at 262-548-7525.

Waukesha County Circuit Court
Date: November 24, 2025

PROCESS SERVER

DATE                    TIME

GF-180(CCAP), 11/2020 Electronic Filing Notice                                        §801.18(5)(d), Wisconsin Statutes
This form shall not be modified. It may be supplemented with additional material.

**FILED**
**11-24-2025**
**Clerk of Circuit Court**
**Waukesha County**
**2025CV002250**

STATE OF WISCONSIN CIRCUIT COURT WAUKESHA COUNTY

ANNETTE KUGLITSCH
316 E Wabash Ave
Waukesha, WI 53186,

PETER BERNEGGER
1806 Brynnwood Trace
New London, WI 54961,

Plaintiffs,

Case No.: _____
Case Code: 30703

vs.

DOUGLAS HAAG
5015 S 14th St Apt 4
Milwaukee, WI 53221,

Defendant.

**SUMMONS**

STATE OF WISCONSIN:

To the above-named Defendant:

You are hereby notified that the Plaintiffs named above have filed a lawsuit or other legal action against you. The Complaint, which is attached, states the nature and basis of the legal action.

Within twenty (20) days of receiving this Summons, you must respond with a written Answer, as that term is used in chapter 802 of the Wisconsin Statutes, to the Complaint. The court may reject or disregard an Answer that does not follow the requirements of the statutes. The Answer must be sent or delivered to the Court, whose address is:

Clerk of Circuit Court, Monica Paz
Waukesha County Courthouse
515 W. Moreland Boulevard
Waukesha, Wisconsin 53188

1

and to the Plaintiffs, whose addresses are:

Annette Kuglitsch
316 E Wabash Ave
Waukesha, WI 53186

and

Peter Bernegger
1806 Brynnwood Trace
New London, WI 54961

You may have an attorney help or represent you.

If you do not provide a proper Answer within twenty (20) days, the court may grant judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right.

November _____, 2025

_____

Clerk of Court

Seal, if any:

2

**FILED**
**11-24-2025**
**Clerk of Circuit Court**
**Waukesha County**
2025CV002250

STATE OF WISCONSIN          CIRCUIT COURT          WAUKESHA COUNTY

ANNETTE KUGLITSCH
316 E Wabash Ave
Waukesha, WI 53186,

PETER BERNEGGER
1806 Brynnwood Trace
New London, WI 54961,

            Plaintiffs,

v.

DOUGLAS HAAG,
5015 S 14th St Apt 4
Milwaukee, WI 53221,
in his individual capacity,

            Defendant.

Case No. _____
Code: 30703
JURY TRIAL DEMANDED

**COMPLAINT FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF
(42 U.S.C. § 1983 – FIRST AND FOURTEENTH AMENDMENTS)**

## I. INTRODUCTION

1. This civil rights action under 42 U.S.C. § 1983 seeks damages and equitable relief for violations of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.

2. The case arises from Defendant Douglas Haag's conduct as a Commissioner of the City of Milwaukee Election Commission when he:

   a. Deliberately refused to meaningfully review Plaintiffs' June 7, 2024 voter registration

1

list challenge and the supporting TITAN Workbook data;

b. Publicly disparaged Plaintiffs' work as "inaccurate" or "wrong" despite never having examined the evidence; and

c. On October 30, 2024, six days before the November 5, 2024 federal election, voted to deny remediation, resulting in the use of unremediated voter rolls containing tens of thousands of registrations with serious address validity issues.

3. Defendant's actions converted what was supposed to be a fair, evidence-based process for list-maintenance challenges into a sham proceeding with a predetermined outcome, causing vote dilution, denial of procedural protections, and retaliation for Plaintiffs' protected petitioning activity.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over civil actions under Article VII, section 8 of the Wisconsin Constitution and Wis. Stat. § 801.02.

5. State courts have concurrent jurisdiction over civil rights claims brought under 42 U.S.C. § 1983. See *Tafflin v. Levitt, 493 U.S. 455 (1990); Haywood v. Drown, 556 U.S. 729 (2009)*.

6. Declaratory relief is authorized by Wis. Stat. ch. 806 and this Court's equitable powers. Injunctive relief is authorized by Wis. Stat. ch. 813 and the Court's inherent equitable authority. Attorney fees may be awarded under 42 U.S.C. § 1988.

7. Venue is proper in Waukesha County under Wis. Stat. § 801.50(2) and (3) because Plaintiff Annette Kuglitsch resides in Waukesha County, Bernegger conducted some of his research in this same county, and Plaintiffs have selected this forum.

2

## III. PARTIES

8. Plaintiff Annette Kuglitsch is a natural person, a Wisconsin resident, and a registered voter who resides in Waukesha County. She voted in the November 5, 2024 federal election.

9. Plaintiff Peter Bernegger is a natural person, a Wisconsin resident, and a registered voter who resides in Waupaca County. He voted in the November 5, 2024 federal election.

10. Plaintiff Kuglitsch and Plaintiff Bernegger (together "Plaintiffs") worked with colleagues to obtain, analyze, and submit data regarding the City of Milwaukee's voter registration list, including the June 7, 2024 TITAN Workbook and cover letter.

11. Defendant Douglas Haag is, and at all relevant times was, a Commissioner of the City of Milwaukee Election Commission ("MEC"), a municipal body charged with election administration and voter registration list maintenance in the City of Milwaukee. He is sued in his individual capacity.

12. At all relevant times, Defendant Haag was acting under color of state law and municipal authority. His refusal to review Plaintiffs' submission, his public statements discrediting Plaintiffs' data, and his vote to deny remediation of the voter rolls were official acts taken in his role as a Commissioner.

## IV. LEGAL FRAMEWORK

13. Wisconsin statutes regulate voter registration, list maintenance, and elector challenges. These include, without limitation, Wis. Stat. §§ 5.05, 5.06, 5.061, 6.32, 6.36, 6.48, 6.50, and 6.325.

3

14. For municipalities like the City of Milwaukee that have a board of election commissioners, that board and its executive director perform the duties otherwise assigned to a municipal clerk, including maintaining accurate voter registration lists and responding to challenges and notices.

15. Wisconsin law requires that voter registration lists be kept "current and accurate" and that municipal authorities act upon reliable information that registrations are invalid, undeliverable, or associated with moved or ineligible electors.

16. When citizens present a formal challenge or detailed information suggesting that large numbers of registrations are invalid, municipal election officials are required to receive, review, and act on that information in good faith, consistent with the statutes and with due process.

17. The federal Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 21083(a), imposes additional list-maintenance obligations on states and municipalities participating in federal elections. HAVA requires that states "ensure that voter registration records in the State are accurate and are kept current."

18. The interaction of Wisconsin's voter registration statutes and HAVA creates a protected procedural entitlement for electors who submit proper evidence-based challenges: they are entitled to a real, good-faith evaluation of their submissions, not a sham process, and to decisions based on evidence rather than pretext.

19. As a Commissioner of MEC, Defendant Haag had the duty to ensure that properly submitted list-maintenance evidence was actually reviewed and that decisions about remediation were made in good faith and in compliance with state and federal law.

## V. FACTUAL ALLEGATIONS

4

A. The June 7, 2024 TITAN Submission

20. On June 7, 2024, Plaintiffs and their colleagues submitted a formal challenge and data package to the City of Milwaukee Election Commission concerning the accuracy and integrity of the City's voter registration list.

21. The submission included a detailed cover letter and a ten-worksheet spreadsheet (the "TITAN Workbook"), generated using:

a. USPS CASS (Coding Accuracy Support System);

b. Delivery Point Validation (DPV); and

c. USPS National Change of Address (NCOA) indicators.

22. The TITAN Workbook analyzed 271,962 active City of Milwaukee registrations and identified more than 56,000 registrations with address-validity problems, including:

a. Approximately 35,699 NCOA "permanent" movers;

b. Approximately 6,187 out-of-state movers;

c. Approximately 4,907 out-of-Milwaukee-County movers;

d. Approximately 5,080 addresses flagged by USPS as "Vacant";

e. DPV-N or blank addresses that cannot be validated as deliverable; and

f. Registrations tied to commercial, USPS, or similar non-residential locations.

23. The cover letter explained the TITAN methodology, described each worksheet and category of irregularity, and requested that the Commission review the data, send verification postcards where appropriate, inactivate ineligible registrations, and refer

5

obviously unlawful registrations (such as registrations using commercial mail drops) for investigation or prosecution.

24. Plaintiffs requested timely action, including a response within approximately five days, to permit remediation well before the November 5, 2024 federal election.

25. Plaintiffs and their colleagues made themselves available to explain USPS codes, the TITAN system, and the meaning of CASS, DPV, and NCOA indicators.

B. The October 30, 2024 Meeting and Supposed "Deliberation"

26. On October 30, 2024, the Milwaukee Election Commission convened a public meeting at which, among other items, Plaintiffs' June 7, 2024 submission and remediation request were to be addressed.

27. Defendant Haag sat as one of the Commissioners hearing and deciding the matter. The meeting took place only six days before the November 5, 2024 federal election, making any timely remediation urgent.

28. During the public portion of the meeting, Plaintiffs and their colleagues described the submission, the TITAN Workbook, the USPS sources, and the categories of address-validity problems discovered in the City's registration list.

29. The materials before MEC, including Defendant Haag, showed that tens of thousands of registrations were associated with indications of permanent moves, undeliverable or vacant addresses, or other serious irregularities that, if left unremediated, would undermine the accuracy of the voter rolls.

6

30. Before voting, Defendant Haag and the two other Commissioners recessed with a city attorney to a private room, stating or implying that they would review the materials, "view the evidence," and deliberate about the remediation request.

31. Plaintiffs reasonably understood this to mean that the Commissioners, including Haag, would actually examine the TITAN Workbook, consider the USPS codes, and discuss whether the law required action on the flagged registrations.

32. In reality, Defendant Haag did not review the TITAN Workbook, did not look at the details of the spreadsheets, did not examine the USPS codes, and did not engage in any meaningful deliberation about the evidence.

33. The brief recess was insufficient in length and process to permit genuine examination of 56,000 flagged registrations spread over ten worksheets, and there were no questions or requests for clarification about the data or codes.

34. When the Commissioners returned to the public session, Defendant Haag and the Commission did not identify any specific error in Plaintiffs' data or methodology and did not point to any concrete test or independent verification they had undertaken.

C. The False Statements and Denial of Remediation

35. After the recess, in open session, Defendant Haag publicly stated, in substance, that Plaintiffs' data, information, and claims were "inaccurate," "wrong," "flawed," or otherwise unreliable.

36. Defendant Haag made these statements despite never having meaningfully reviewed the TITAN Workbook or its underlying data.

7

37. Defendant Haag then voted to deny remediation and to maintain the existing voter registration list without implementing the requested clean-up or sending verification mailings based on the TITAN flags.

38. Based on the recess length, the absence of questions on methodology, the absence of any specific errors identified, and subsequent events, Plaintiffs allege that Defendant Haag and the other Commissioners had agreed during the recess to deny the challenge without reviewing the materials.

39. By publicly branding Plaintiffs' work as inaccurate and flawed without reviewing it, Defendant Haag knowingly made false or recklessly misleading statements in his official capacity.

40. Defendant Haag's actions ensured that the November 5, 2024 election in Milwaukee would proceed using the unremediated voter rolls, containing the tens of thousands of suspect registrations documented in the TITAN Workbook.

41. Both Plaintiffs voted in the November 5, 2024 election. The presence of tens of thousands of address-invalid and moved registrations on the rolls diluted the weight of Plaintiffs' lawful votes, undermined the integrity of the election in which they participated, and deprived them of the meaningful, good-faith consideration of their evidence to which they were entitled under state and federal law.

42. Defendant's conduct was knowing, intentional, and in bad faith. He avoided reviewing the evidence to preserve a pretext for denial, publicly discredited Plaintiffs' work, and ensured that remediation could not occur before the election. Evidence of Use of Flagged Registrations in the November 5, 2024 Election

43. After the November 5, 2024 election, Plaintiffs obtained official poll lists, absentee

8

ballot logs, and/or cast-vote or turnout records for the City of Milwaukee through public-records requests and other lawful means.

44. Plaintiffs then cross-referenced those November 5, 2024 election records against the TITAN workbook that had been submitted to the Milwaukee Election Commission on June 7, 2024.

45. That cross-reference showed that at tens of thousands of registrations that had been flagged in the TITAN Workbook as address-invalid or moved were in fact used to cast ballots in the November 5, 2024 election. These included:

a. registrations whose official USPS NCOA data showed a *permanent* move outside the City of Milwaukee prior to November 5, 2024;

b. registrations at addresses that USPS classified as "Vacant" for at least 90 days prior to the election; and

c. registrations at commercial mail drops, post office locations, or other non-residential addresses.

46. By way of example and not limitation, the TITAN Workbook identified registrants at permanent out-of-state NCOA movers; the November 5, 2024 poll list or absentee log shows that ballots were cast in that election under that same registration. Similarly, the TITAN Workbook identified registrants at specific addresses as being a USPS "Vacant" address, yet the November 5, 2024 records show that a ballots were cast under that registration.

47. Plaintiffs allege, on information and belief and based on this cross-referencing of official election records with the TITAN Workbook, that Defendant's October 30, 2024 refusal to remediate the rolls enabled at tens of thousands of ballots to be cast from registrations that were known or reasonably should have been known to be invalid under Wisconsin law.

9

48. Those ballots were counted in the certified results of the November 5, 2024 election and were included in the total vote pool against which Plaintiffs' lawful votes were tallied.

49. Defendant's actions were also retaliatory. Plaintiffs engaged in protected petitioning activity by formally challenging the voter rolls and participating in the October 30, 2024 meeting. Defendant responded by disparaging their work, denying their petition, and using his official position to chill similar efforts.

50. Defendant's actions violated clearly established constitutional rights, including the right to be free from arbitrary and irrational government action that dilutes the value of lawful votes, the right to procedural due process in the adjudication of statutory protections, and the right to be free from retaliation for petitioning government.

51. As detailed in the above, ballots were in fact cast in the November 5, 2024 election from registrations that the TITAN Workbook had flagged as permanent movers, vacant addresses, or commercial/non-residential locations. Those ballots were counted and included in the official results of that election.

52. Plaintiffs allege, on information and belief and based on cross-referencing the TITAN Workbook with the November 5, 2024 poll lists and absentee records, that at least 10,000 ballots were cast in that election from registrations that would have been inactivated, cured, or otherwise remediated before November 5, 2024 if Defendant had not refused remediation on October 30, 2024.

53. Defendant's Oct 30, 2024 decision to deny remediation, taken with knowledge of the TITAN data and without meaningful review, was a substantial factor in allowing those invalid registrations to remain active through Nov 5, 2024 and to be used to cast ballots in that election.

10

54. Those ballots from address-invalid or moved registrations were counted in the same election and in the same contests in which Plaintiffs' lawful votes were cast. By increasing the pool of counted ballots with votes that should not have been lawfully cast or counted, Defendant's conduct diluted the relative weight of Plaintiffs' valid votes, causing them concrete, particularized injury in the November 5, 2024 election.

## VI. CLAIMS FOR RELIEF

## COUNT I – EQUAL PROTECTION (VOTE DILUTION AND ARBITRARY TREATMENT)

## 42 U.S.C. § 1983 – Fourteenth Amendment

55. Plaintiffs reallege and incorporate paragraphs 1 through 44 as though fully set forth here.

56. The Fourteenth Amendment guarantees Plaintiffs the equal protection of the laws and protects their right to have their votes counted without being arbitrarily diluted by the unlawful retention of large numbers of ineligible or address-invalid registrations on the voter rolls.

57. Acting under color of state law, Defendant Haag knowingly refused to review Plaintiffs' USPS-based evidence, falsely labeled it inaccurate in a public setting, and voted to deny remediation in order to maintain tens of thousands of suspect registrations on Milwaukee's voter registration list immediately prior to the November 5, 2024 election.

58. Defendant's actions were arbitrary and irrational. No legitimate governmental interest is served by deliberately refusing to examine credible evidence of registration irregularities, falsely discrediting that evidence, and then denying any corrective action.

11

59. Defendant's conduct caused and substantially contributed to vote dilution that concretely injured Plaintiffs in the November 5, 2024 election by:

a. Maintaining inflated rolls that could be used for unlawful voting or misallocation of resources; and

b. Undermining the equal weight and integrity of Plaintiffs' lawful votes compared to the total pool of recorded votes.

60. Defendant's actions were intentional, willful, and in reckless disregard of Plaintiffs' federal rights.

61. As a direct and proximate result of Defendant's conduct, Plaintiffs suffered damages, including but not limited to the dilution of their votes, loss of confidence in the integrity of the electoral process, and emotional distress arising from the government's arbitrary treatment of their petition.

62. Defendant Haag is liable to Plaintiffs under 42 U.S.C. § 1983 for compensatory damages, declaratory relief, and appropriate forward-looking injunctive relief.

## COUNT II – FIRST AMENDMENT RETALIATION

42 U.S.C. § 1983 – First Amendment

61. Plaintiffs reallege and incorporate paragraphs 1 through 52 as though fully set forth here.

62. Plaintiffs engaged in protected activity when they:

a. Petitioned the City of Milwaukee Election Commission by submitting their June 7, 2024 TITAN Workbook and cover letter; and

b. Participated in the October 30, 2024 public meeting to explain and advocate for remediation of the voter rolls.

12

63. Plaintiffs' activities are core First Amendment petitioning and speech, directed at improving election integrity and compliance with law.

64. In response to Plaintiffs' protected activity, Defendant Haag took adverse actions, including:

a. Publicly disparaging Plaintiffs' submission as inaccurate, wrong, or flawed without having reviewed the evidence;

b. Voting to deny remediation and to proceed with unremediated voter rolls; and

c. Using his official position to send a message that citizen-initiated data-driven challenges will be ignored and publicly discredited.

64. Defendant's actions were taken because of Plaintiffs' protected petitioning and speech. But for Plaintiffs' efforts to present their data and press for action, Defendant's specific disparaging statements and his willful refusal to review the data would not have occurred.

65. Defendant's actions caused Plaintiffs harm, including vote dilution, reputational injury (by casting their data and work in a false negative light), and emotional distress, and would chill a person of ordinary firmness from engaging in similar protected activity.

66. Defendant's conduct lacked any legitimate governmental justification and was undertaken in bad faith.

67. Defendant is liable to Plaintiffs under 42 U.S.C. § 1983 for compensatory and, in his individual capacity, punitive damages, as well as declaratory and injunctive relief.

COUNT III – PROCEDURAL DUE PROCESS

13

42 U.S.C. § 1983 – Fourteenth Amendment

68. Plaintiffs reallege and incorporate paragraphs 1 through 60 as though fully set forth here.

69. Wisconsin's list-maintenance and challenge statutes, in conjunction with HAVA's list-maintenance requirements, create a protected interest in having properly submitted, evidence-based challenges meaningfully considered on the merits by the municipal clerk or board of election commissioners.

70. Once Plaintiffs submitted their June 7, 2024 challenge, accompanied by detailed USPS-based data, they had a legitimate expectation that MEC and its Commissioners, including Defendant Haag, would review that evidence in good faith and render a decision based on actual evaluation rather than pretext.

71. Procedural due process requires that when the state creates such a statutory process, the government must provide at least:

a. A genuine opportunity to be heard;

b. Good-faith consideration of the evidence presented; and

c. A decision that is not based on knowingly false premises or sham deliberation.

72. Defendant Haag deprived Plaintiffs of procedural due process by:

a. Deliberately refusing to review or examine the TITAN Workbook or the underlying USPS data;

b. Participating in a brief "recess" that was represented as a time for evidence review and deliberation but, in fact, was not used for those purposes;

c. Returning to the public meeting and asserting, falsely and without evidentiary basis, that

14

Plaintiffs' data was inaccurate or flawed; and

d. Voting to deny remediation on a predetermined and pretextual basis.

73. The October 30, 2024 proceeding was a sham. Plaintiffs were given a façade of process but no actual meaningful review of their evidence.

74. A direct and proximate result of Defendant Haag's actions, Plaintiffs were deprived of their protected interest in a fair and meaningful list-maintenance challenge process, and suffered concrete harms including vote dilution, denial of procedural protections, reputational injury, and emotional distress.

75. Defendant Haag is liable to Plaintiffs under 42 U.S.C. § 1983 for compensatory damages, nominal damages to reflect the violation of their Due Process rights, and appropriate declaratory and injunctive relief.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant Haag and grant the following relief:

A. A declaration that Defendant Haag's actions described above violated Plaintiffs' rights under the First and Fourteenth Amendments, including equal protection, procedural due process, and freedom from retaliation.

B. A declaration that the October 30, 2024 handling of Plaintiffs' June 7, 2024 challenge was constitutionally inadequate and constituted a sham proceeding.

C. Compensatory damages in an amount to be determined at trial for vote dilution, denial of procedural protections, reputational injury, and emotional distress.

D. Nominal damages to reflect the violation of Plaintiffs' constitutional rights even apart from any specific monetary loss.

15

E. Punitive damages against Defendant Haag in his individual capacity for his intentional and reckless disregard of Plaintiffs' clearly established constitutional rights.

F. Permanent injunctive relief against Defendant Haag in his official capacity, requiring that, in future evidence-based voter registration list challenges:

1. MEC and its Commissioners actually review the submitted evidence in good faith;

2. MEC refrain from publicly branding citizen submissions as inaccurate or flawed absent genuine review and objectively identified errors; and

3. MEC adopt and follow written procedures ensuring that list-maintenance challenges are heard and decided on the merits, consistent with Wisconsin law and the Constitution.

G. An order that MEC and Defendant Haag in his official capacity provide training to Commissioners on their constitutional obligations regarding evidence review, due process, and citizen petitioning.

H. Plaintiffs' costs, disbursements, and reasonable attorney fees under 42 U.S.C. § 1988 (if represented by counsel).

I. Such other and further relief as the Court deems just and proper.


JURY DEMAND     Plaintiffs demand a trial by jury on all issues so triable.


Respectfully submitted,                                   November 24, 2025


Electronically Signed By: *Annette Kuglitsch*
Annette Kuglitsch - Plaintiff
316 E Wabash Ave
Waukesha, WI 53186
Phone: 1-262-808-3661
akuglitsch@yahoo.com

16

Electronically Signed By: *Peter Bernegger*
Peter Bernegger - Plaintiff
1806 Brynnwood Trace
New London, WI 54961
Phone: 1-920-551-0510
Pmbmap123@gmail.com

17