JOE NOLAN, JUSTIN GAVERY, and
PETER BERNEGGER,

          Plaintiffs,

v.

                                Case No. 25-CV-1970

CITY OF MILWAUKEE, DOUGLAS HAAG,
KATHRYN Z. BLOCK, PATRICIA RUIZ-CANTU, and
TERRELL MARTIN,

          Defendants.

## DEFENDANTS' BRIEF IN SUPPORT OF
## THEIR MOTION TO DISMISS

Defendants City of Milwaukee, Douglas Haag, Kathryn Z. Block, Patricia Ruiz-Cantu, and Terrell Martin (collectively, the "City Defendants"), by and through their counsel, submit this memorandum of law in support of their motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). This Honorable Court should dismiss Plaintiffs' second amended complaint (SAC) because it fails to plausibly state a claim upon which relief may be granted.

## INTRODUCTION

This suit arises from Plaintiffs' mistaken belief that Wisconsin law establishes a statutory process for individuals to challenge elector registration lists pursuant to Wis. Stat. § 6.50. *See generally* ECF No. 33, ¶¶ 130-131. Because Wis. Stat. § 6.48 specifies the exclusive process by which individuals may challenge elector registrations, these Plaintiffs cannot show that they were entitled to adjudication of their 'list-maintenance' challenge purportedly brought under § 6.50. As a consequence, Fourteenth Amendment Due Process does not apply to purported § 6.50 'list-

maintenance' challenges. *Minch v. City of Chi.*, 486 F.3d 294, 302 (7th Cir. 2007) (holding that due process guarantees only attach to protected property or liberty interests).

Although Plaintiffs advance several alternative theories of liability, each is likewise deficient as a matter of law. Plaintiffs' First Amendment claims, *see* ECF No. 33, ¶¶ 139-146, are implausible because the right to petition does not entail a right to a particular outcome, and retaliation requires the imposition of consequences *after* the plaintiff engaged in protected activity *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). *See also Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000) (rejecting argument that denial of one's petition establishes a § 1983 claim under the First Amendment). Plaintiff Bernegger lacks Article III standing because the SAC does not plausibly allege any change in his legal status. *Compare* ECF No. 33, ¶¶ 147-153 (identifying denial of Plaintiffs' petition as a change in legal status), *with Doyle v, Camelot Care Centers, Inc.*, 305 F.3d 603 (7th Cir. 2002) (finding plaintiff had standing to challenge an agency determination because it adversely impacted her economic prospects). Plaintiffs' equal protection claim is implausible because private actors and government actors are dissimilar and need not be treated the same. *See generally* ECF No. 33, ¶¶ 154-159 (claiming Plaintiffs' challenge data was treated differently than if Defendants had itself obtained USPS data). Their municipal claim is fatally deficient because Plaintiffs cannot plausibly show deliberate indifference because no court has previously recognized an individual right to challenge electors pursuant to Wis. Stat. § 6.50. *See generally* ECF No. 33, ¶¶ 160-165 (alleging the City's policy of considering individual challenges under Wis. Stat. § 6.48(2) only violates their civil rights). Plaintiffs' conspiracy claim likewise cannot be proved because it necessarily depends upon the existence of a clearly established right to challenge electors under § 6.50. (ECF No. 33, ¶¶ 166-171).

This suit should be dismissed in its entirety with prejudice because Plaintiffs have failed to allege plausible claims for relief despite repeated opportunities. Additional amendment would be futile because the deficiency does not arise from lack of factual allegations, but rather

2

misapplication of the law to those alleged facts. *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) (noting a district court may deny leave to amend where the proposed amendment does not cure the original deficiencies, or could not survive a subsequent motion to dismiss).

## PROCEDURAL HISTORY

On or about November 24, 2025, Plaintiffs filed suit in Waukesha County Circuit Court seeking compensatory damages and declaratory and injunctive relief under 42 U.S.C. § 1983 and the First and Fourteenth Amendments. (ECF No. 1-2). Defendants removed to federal court. (ECF No. 1). On February 2, 2026, Defendants moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). In response, Plaintiffs filed an amended complaint on February 23, 2026. (ECF No. 15). Defendants filed a second motion to dismiss on March 9, 2026. (ECF No. 20). Plaintiffs did not substantively respond, instead seeking additional leave to amend their complaint. (ECF No. 25). Defendants opposed Plaintiffs' motion for leave to amend. (ECF No. 26). By decision and order dated May 15, 2026, the Court granted Plaintiffs' motion for leave to amend, directed the Clerk to accept the SAC as the operative complaint, and denied Defendants' motion to dismiss as moot. (ECF No. 32).

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must contain sufficient facts to "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). If the plaintiff cannot "demonstrate some merit or plausibility" to his or her claims, then the Court must dismiss the plaintiff's suit. *United States v. Vaughn*, 722 F.3d 918, 926 (7th Cir. 2013).

## ARGUMENT

**I.     Plaintiffs' Second Amended Complaint Should Be Dismissed Because It Fails to Plausibly State a Claim Upon Which Relief May Be Granted.**

Under Wisconsin law, private citizens may challenge another registered elector's qualifications submitting an affidavit attesting to the reason(s) why the challenger believes the challenged voter is not eligible. *See* Wis. Stat. § 6.48(1)(a). When an elector is challenged, both the challenger and the challenged elector must both appear before local election officials who have discretion to determine the challenged elector's eligibility. *See* Wis. Stat. § 6.48(1)(b). The challenger must prove the challenged elector is disqualified beyond a reasonable doubt. *See* Wis. Stat. § Wis. Stat. § 6.48(4).

Plaintiffs sought to challenge voter qualifications before the Milwaukee Election Commission (MEC), but deny that the § 6.48 statutory framework applies to them. *See, e.g.,* ECF No. 33, ¶¶ 4-8, 18, 30, 36-37, 51-58, 64, 88, 130-31, 157, and 161-64. Separate provisions of Wisconsin law direct local election officials to periodically revise the voter registration list. *See* Wis. Stat. § 6.50(1) ("[F]ollowing each general election, the commission shall examine the registration records … and identify each elector who has not voted within the previous 4 years … and shall mail a notice to the elector[.]"). Wis. Stat. § 6.50(3) states:

> Upon receipt of reliable information that a registered elector has changed his or her residence to a location outside of the municipality, the municipal clerk or board of election commissioners shall notify the elector by mailing a notice by 1st class mail to the elector's registration address stating the source of the information. All municipal departments and agencies receiving information that a registered elector has changed his or her residence shall notify the clerk or board of election commissioners. If the elector no longer resides in the municipality or fails to apply for continuation of registration within 30 days of the date the notice is mailed, the clerk or board of election commissioners shall change the elector's registration from eligible to ineligible status. Upon receipt of reliable information that a registered elector has changed his or her residence within the municipality, the municipal clerk or board of election commissioners shall change the elector's registration and mail the elector a notice of the change. This subsection does not restrict the right of an elector to challenge any registration under s. 6.325, 6.48, 6.925, 6.93, or 7.52 (5).

4

Section 6.50(8) separately authorizes municipalities "to arrange with the U.S. postal service … to receive change of address information … for revision of the elector registration list."

Plaintiffs theorize that § 6.50(3) provides a separate means to challenge electors, without submitting an affidavit or opportunity for the challenged elector to be heard. *See, e.g.,* ECF No. 33, ¶¶ 8, 11, 18, 20, 30, 33, 36-37, 45, 51-52, 81-84, 88, 92-93, 107, 123, 130-31, 157, 163-164, 168-69. They further posit that because § 6.50(8) authorizes municipalities to obtain address data directly from the postal service, that if they collect and collate postal data that city officials must deem their dataset "reliable." *Id.*

No Wisconsin court has ever adopted this view of Wis. Stat. § 6.50. No Wisconsin court has ever found an individual right to bring or maintain 'list-maintenance' challenges based on postal data collected by private citizens. *See generally State ex rel. Zignego v. Wis. Elections Comm'n*, 396 Wis. 2d 391, 399-407 (2021) (holding that Wis. Stat. § 6.50(3) does not impose a positive and plain duty on the Wisconsin Elections Commission). *See also Wisconsin Voter All. v. Millis*, 166 F.4th 627, 634 (7th Cir. 2026) ("Congress has not created a private right of action for individuals to enforce HAVA in federal court."); *Bernegger v. Millis*, *et al.*, E.D. Wis. Case No. 26-cv-0003, Dkt. 19 (dismissing complaint alleging procedural due process and First Amendment claims because the plaintiff lacked a protected property or liberty interest in private enforcement of 52 U.S.C. §§ 21111-12 (HAVA)). The statutory text does not explicitly contemplate individual challenges, and expressly refers to the individual challenge framework in § 6.48. *See* Wis. Stat. § 6.50(3). By its terms, the statute vests local election officials with discretion to determine what constitutes "reliable evidence." *Id.* Despite all of this, Plaintiffs insist that their interpretation of the statute is the correct reading and the Defendants violated their civil rights in refusing to adopt their interpretation.

Plaintiffs lack standing to directly challenge the Milwaukee Election Commission's (MEC) administration of state election law. *Compare* ECF No. 33, ¶¶ 116-117 (identifying potentially

unqualified electors voting as consequential harm), *with Bost v. Ill. Bd. of Elections,* 114 F.4th 634, 640 (7th Cir. 2024) (rejecting a vote-dilution theory of standing), *rev'd on other grounds,* 223 L.Ed.2d 357, 359-360 (2026). Because their alternative theories are likewise constitutionally deficient, this Court should dismiss this suit in its entirety with prejudice.

### A. Plaintiffs' Procedural Due Process Claim Necessarily Fails Because Plaintiffs Lack an Individual Right to Bring or Maintain 'List-Maintenance' Elector Challenges.

The SAC sets forth Plaintiffs' procedural due process claim in paragraphs 126-138. (ECF No. 33). The heart of their claim is that Plaintiffs were denied genuine adjudication under Wis. Stat. § 6.50, and that § 6.48 does not apply to them. (ECF No. 33, ¶¶ 130-131).

The Fourteenth Amendment provides that "[n]o state … shall … deprive any person of life, liberty, or property [] without due process of law." The due process clause mandates minimum procedural protections before altering a protected property or liberty interest. *Town of Castle Rock, Colo. v. Gonzalez,* 545 U.S. 748, 756 (2005) ("The procedural component of the Due Process Clause does not protect everything that might be described as a benefit[.] To have a property interest in a benefit, a person … must … have a legitimate claim of entitlement to it.") (internal quotations and citation omitted). While due process is federally guaranteed, the existence of an entitlement requires "an independent source [of an entitlement] such as state law." *Id.*, at 756 (citing *Paul v. Davis*, 424 U.S. 693, 709 (1976)). Thus, the viability of Plaintiffs' procedural due process claim necessarily depends on the existence of an individual right to bring or maintain 'list-maintenance' challenges under Wis. Stat. § 6.50.

It is well-settled that "a protected property or liberty interest" in a result is essential to make out a valid procedural due process claim. *Minch*, 486 F.3d at 302; *see also Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). Plaintiffs' complaint does not state a plausible claim for a violation of their procedural rights because Wis. Stat. § 6.50 does not create an individual right to bring or

6

maintain list-maintenance challenges, and no Wisconsin court has previously held that any such individual right exists.

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), and *Ciechon v. City of Chicago*, 686 F.2d 511 (7th Cir. 1982), simply hold that procedural guarantees apply to undisputed statutory rights. *Shvartsman v. Apfel,* 138 F.3d 1196, 1199 (7th Cir. 1998) (holding that "the reason there is a right of access to adjudicatory procedures *is not* because litigants have property interests in the procedures themselves. Rather, access to adjudicatory procedures is important because it serves to protect the litigants' underlying legal claims.") (emphasis added). *Logan* and *Ciechon* are inapposite here because Plaintiffs cannot show they possessed a recognized property or liberty interest in list-maintenance challenges brought under Wis. Stat. § 6.50 at any relevant time.

Plaintiffs' procedural due process claim fails because they cannot plausibly show that they were statutorily entitled to adjudication of 'list-maintenance' challenges pursuant to Wis. Stat. § 6.50. The Fourteenth Amendments' procedural protections do not attach to 'list-maintenance' challenges under Wisconsin law because Wisconsin courts have never recognized an individual entitlement to bring or maintain 'list-maintenance' challenges under state law. Even if Plaintiffs do have a protected interest in petitioning election officials to uphold state law, that interest is rooted in Wis. Stat. § 6.48. Thus, when Defendants allowed Gavery and Nolan to present their challenges under Wis. Stat. § 6.48 and found that their evidentiary basis was insufficient as a matter of law the Plaintiffs received all the process that was due to them.

**B. Plaintiffs' First Amendment Claims Are Not Cognizable Under 42 U.S.C. § 1983.**

Plaintiffs' SAC asserts § 1983 liability under the First Amendment for either infringing upon the right to petition and/or retaliation. (ECF No. 33, ¶¶ 139-146). As before, the thrust of these claims is that Plaintiffs desired to be heard upon a list-maintenance challenge pursuant to Wis. Stat. § 6.50 but MEC only considered their challenge under § 6.48(2). (*Id.*, ¶¶ 141-142).

7

In general, trial courts may not consider materials outside the pleadings at the motion to dismiss stage—however, two exceptions apply to this rule. First, pleading exhibits are part of the pleadings for all purposes. *See* Fed. R. Civ. P. 10(c). Second, courts may consider materials incorporated-by-reference into the plaintiff's complaint. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citing *Wright v. Assoc. Ins. Co. Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994). Plaintiffs attached a transcript of the October 2025 hearing to their first amended complaint. (ECF No. 15-2). As such, the Court may consider whether Plaintiffs' allegations are plausible in light of the transcript without converting Defendants' motion to dismiss to a motion for summary judgment. *Id.*

Based upon the transcript and/or Plaintiffs' admissions, the Court should reject the following conclusions asserted in Plaintiffs' SAC as implausible:

- That MEC ever convened a hearing to consider elector challenges brought under Wis. Stat. § 6.50;

- That Plaintiff Bernegger was publicly identified as the source of Plaintiffs' evidence;

- That any individual defendant ever described Plaintiffs' evidence as "inaccurate," "wrong," "flawed," or "unreliable;" and

- That any individual defendant referred to the "TITAN methodology" or otherwise identified Bernegger as the source of Plaintiffs' evidence in support of their petition;

The Petition Clause protects the right of access to courts and government forums—it does not provide a right to a response or official consideration when people petition local boards. *See generally Wis. Voter All.*, 166 F.4th at 636. Plaintiffs have not alleged a colorable Petition Clause injury because the SAC admits Plaintiffs were not denied access to MEC. Plaintiffs' SAC alleges that they filed multiple 'list-maintenance' challenges to MEC and were not prevented from doing so. As in *Wis. Voter All.*, MEC's conduct regarding Plaintiffs' petition "could not create a constitutional injury" because MEC did not owe Plaintiffs any response. *Id.*, 166 F.4th at 636.

Plaintiffs' retaliation claim is likewise dubious. Retaliation is punishment imposed for engaging in legally protected activity. *See* https://www.law.cornell.edu/wex/retaliation (last accessed May 26, 2026). Conceptually, retaliation arises in a temporal sequence: "retaliation" does not refer to the result of the petition, but to subsequent punishment(s) imposed to get back at the plaintiff for exercising his or her rights. *See, e.g., Bridges*, 557 F.3d at 552 (plaintiff alleged he suffered retaliation through delays in processing his mail, subsequent harassment by staff, and other discipline). Plaintiffs' SAC does not contain any alleged consequences imposed *after* they sought to make list-maintenance challenges.

Plaintiffs fail to state a plausible claim for relief under the First Amendment. MEC afforded Garvey and Nolan an opportunity to be heard on their petition challenging voter registrations. Defendants deemed the evidence they presented insufficient as a matter of law. The statutory framework vests election officials with discretion to determine what constitutes "reliable information," and further vests MEC with discretion to decide whether challenger's have met the burden of proof. The transcript does not plausibly support an inference that individual defendants "disparaged" Plaintiffs' data, or took retaliatory steps against Plaintiffs beyond simply rejecting their desired outcome. Their claims under the First Amendment are not cognizable as a matter of law.

The cases Plaintiffs cite do not suggest otherwise. In *BE&K Constr. Co. v. NLRB*, 536 U.S. 516 (2002), the Supreme Court held that a National Labor Relations Board (NLRB) finding that an employer's lawsuit was "retaliatory" infringed upon its right to petition where the employer was precluded from introducing evidence that its lawsuit was not objectively baseless. *Id*. at 524 and 533-37. *Borough of Dwyea v. Guarnieri,* 564 U.S. 379 (2011), concerned whether a public employee's speech was protected by the Petition Clause. *Id.*, at 382.

Neither case involves circumstances similar to those presented here. On the other hand, in each instance the alleged retaliation occurred *after* the plaintiff's protected activity. In short,

9

neither *BE&K*, nor *Guarnieri* support the conclusion that the First Amendment is implicated whenever a petitioner is dissatisfied with the action taken upon their petition, nor do they suggest that retaliation may be found based upon the reasons given for rejecting the petitioner's proposed outcome.

### C. Plaintiff Bernegger Lacks Article III Standing Because His Legal Status Remains Unchanged.

Plaintiffs assert that the "Due Process Clause protects individuals against governmental imposition of stigma when that stigma is accompanied by a 'plus' factor—[i.e.,] a tangible alteration of plaintiff's legal status or entitlement." (ECF No. 33, ¶ 148 (citations omitted). However, Plaintiffs misread the import of *Paul v. Davis*, 424 U.S. 693 (1976) and *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603 (7th Cir. 2002).

In *Paul*, the Supreme Court denied that the plaintiff had plausibly stated a valid Due Process claim because he not alleged any alteration to his tangible interests or state provided rights. *Id.*, 424 U.S. at 712 ("Respondent in this case cannot assert denial of any right vouchsafed to him by the State and thereby protected by the Fourteenth Amendment. That being the case, petitioner's defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause."). In *Doyle*, the Seventh Circuit held that the plaintiff had plausibly pleaded a Due Process claim because she alleged that agency action adversely impacted her employment opportunities. *Id.*, 305 F.3d at 612.

These cases do not stand for a separate, stigma-based track to liability under the Due Process Clause. They merely acknowledge that the Due Process Clause applies to state action which alters the plaintiff's legal rights, including circumstances where the plaintiff alleges *both* reputational harm and an alteration of their legal rights. *See generally Paul*, 424 U.S. at 709 ("The 'stigma' resulting … was doubtless an important factor in evaluating the extent of the harm …

but we do not think that such defamation, standing alone, deprived [the plaintiff] of any 'liberty' protected by the procedural guarantees of the Fourteenth Amendment.").

Prior to the MEC hearings at issue here, Plaintiffs were entitled to challenge individual elector's registrations pursuant to Wis. Stat. § 6.48. They sought to challenge electors, based on postal data irregularities only, purportedly under Wis. Stat. § 6.50. MEC held that § 6.48 applies to all challenges by private individuals, and that Plaintiffs' evidence could not meet their statutory burden—but did not foreclose future challenges. Plaintiffs fail to allege any change legal status arising from denial of their 'list-maintenance' challenge. As such, Bernegger lacks Article III standing.

**D. Plaintiffs' Equal Protection Claim is Implausible on Its Face Because Plaintiffs Have Not Drawn a Comparison to a Similarly Situated Class or Plausibly Shown That Treating Private Actors Differently Than Government Actors is Irrational.**

Plaintiffs assert that applying the § 6.48 statutory framework to them violated the Equal Protection Clause because MEC treats postal data collected by private actors differently than postal data obtained directly by the municipality.[1] (ECF No. 33, ¶¶ 156-57). To establish a class-of-one equal-protection claim, the plaintiff must show that (1) he or she was intentionally treated differently from others similarly situated in all relevant respects; and (2) no rational basis for such difference in treatment existed. *Reget v. City of Lacrosse*, 595 F.3d 691, 695 (7th Cir. 2010).

Plaintiffs' equal-protection claim is baseless. Plaintiffs cannot show that they were treated differently than similarly situated others, because private actors are dissimilar from government

---

[1] There is no record evidence establishing that MEC seeks, obtains, or relies upon postal data. At most, the Court could conclude that Wis. Stat. § 6.50(8) authorizes the City of Milwaukee to do so. Nonetheless, at the motion to dismiss stage the Court must presume Plaintiffs' allegations are true. *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019) (citing *Bell Atlantic Corp.*, 550 U.S. at 570). *But see Adams v. City of Indianapolis*, 742 F.3d 720 (7th Cir. 2020) ("Factual allegations are accepted as true at the pleading stage, but allegations in the form of legal conclusions are insufficient to survive a [motion to dismiss].") (internal quotations and citation omitted). Defendants accept Plaintiffs' allegation as true for purposes of this motion, but <u>do</u> <u>not</u> admit that it *is* true and reserve the right to respond to each and every complaint allegation if required to file an Answer in the future.

actors. As such, the claim is plainly, fatally flawed at the outset. Even if that were not so, rational reasons justify this difference, including:

- Wis. Stat. § 6.50(8) authorizes municipalities to arrange to obtain postal data directly, but does not require it. Thus, the statute vests each municipality with discretion as to whether to rely upon postal data when revising their registration list.

- More broadly, the statute does not define what constitutes "reliable information." Thus, the legislature vested local election officials with discretion to determine what is "reliable information."

- Even if Bernegger's data was accurate when obtained that does not establish that it remained accurate when presented, or remained accurate throughout the timeframe identified in the complaint. Under the statutory framework, local officials could reasonably conclude that verifying the reliability of privately collected data is unduly burdensome.

The Equal Protection Clause obviously does not apply to the circumstances presented in Plaintiffs' SAC, and even if it did, MEC's differential treatment of private actors compared with government actors has a rational basis. This claim lacks plausibility on its face.

### E. Plaintiffs' Municipal Liability Claim Fails Because No Individual Right to Bring or Maintain 'List-Maintenance' Challenges and No Rational Factfinder Could Find Deliberate Indifference Under the Circumstances.

Plaintiffs allege that the City of Milwaukee is directly liable to them because MEC denied their challenge as lacking sufficient evidentiary support, because of the City's practice of treating all elector challenges by private individuals as arising under Wis. Stat. § 6.48, and "deliberate indifference to training and supervision." (ECF No. 33, ¶ 161). Plaintiffs' first theory, based on the outcome itself, is not cognizable under binding Circuit precedent. *Bost,* 114 F.4th at 640, *rev'd on other grounds,* 223 L.Ed.2d 357, 359-360 (2026). Plaintiffs second and third theories each depend upon the conclusion that Wis. Stat. § 6.50 establishes an alternative means by which private actors may challenge elector registrations.

"A municipality cannot be liable under *Monell* when there is no underlying constitutional violation." *Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014). This Court should dismiss

12

Plaintiffs' claim for municipal liability because they cannot establish a valid, underlying constitutional violation based upon either the Due Process Clause or the First Amendment for the reasons outlined *supra*. Even if Plaintiffs could establish that a constitutional violation occurred, they would still be required to plausibly show that City officials were deliberately indifferent to the risk of such violations and that City action (or inaction) was the moving-force behind such violations. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021). It is axiomatic that deliberate indifference requires prior notice. *Bryan County v. Brown*, 520 U.S. 397, 407 (1997) (explaining that deliberate indifference requires plaintiff to show "it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences."). This Court should dismiss Plaintiffs' municipal liability claim because no rational factfinder could plausibly conclude that the City consciously disregarded a known risk of constitutional violations arising from an as-yet-unrecognized private right of action to bring and maintain 'list-maintenance' challenges pursuant to Wis. Stat. § 6.50.

### F. Plaintiffs Conspiracy Claim Fails Because Plaintiffs Cannot Show a Deprivation of Clearly Established Federal Rights.

Plaintiffs' conspiracy claim, like the claim for municipal liability, is derivative in nature. Just as the municipal claim requires the Plaintiff to produce evidence that plausibly shows a constitutional violation occurred to show that municipal policy caused that violation, so too must Plaintiffs necessarily establish that Defendants actually deprived them of one or more civil rights to make out a claim that these Defendants conspired to do so. *Daugherty v. Harrington*, 906 F.3d 606, 612 (2018) ("To prevail on a conspiracy claim, the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in further actually deprived him of those rights.") (internal quotations and citation omitted). For all the reasons previously discussed, Plaintiffs fail to establish a deprivation of their civil rights. Their conspiracy claim is implausible on its face on that basis. This Court should dismiss.

## II.     The Individual Defendants Are Entitled to Qualified Immunity in Any Event.

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights[.]" *Mabes v. Thompson*, 136 F.4th 697, 705 (7th Cir. 2025) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations and citation omitted). *See also Doxtator v. O'Brien*, 39 F.4th 852, 863 (7th Cir. 2022) ("Qualified immunity protects 'all but the plainly incompetent or those that knowingly violate the law.'") (internal quotations and citation omitted).

To defeat qualified immunity at the motion to dismiss stage, a plaintiff must plausibly allege (1) that an official violated a clearly established statutory or constitutional right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation and citation omitted). The plaintiff bears the burden to show that a constitutional right was clearly established. *Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000) (citation omitted). If the alleged right was not clearly established at the time, then the claim must be dismissed. *Id.* (citing *Richardson v. McKnight*, 521 U.S. 399, 403 (1997)).

Plaintiffs' SAC cannot overcome qualified immunity. The SAC fails to plausibly allege that the individual defendants violated a statutory or constitutional right, and even if Wis. Stat. § 6.50 plausibly did create an individual right to bring and maintain 'list-maintenance' challenges under Wisconsin law that right was not clearly established at any relevant time. *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) ("[A] complaint may be dismissed … on qualified immunity grounds where the plaintiff asserts the violation of a broad constitutional right that had not been articulated at the time the violation is alleged to have occurred.") (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)).

14

**CONCLUSION**

For the reasons stated, the City Defendants respectfully request that this Court grant their

motion to dismiss because Plaintiffs' SAC does not plead plausible claims for relief.

Dated at Milwaukee, Wisconsin on this 28th day of May, 2026.

EVAN GOYKE
City Attorney

ADDRESS:
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Tel: (414) 286-2601
Fax: (414) 286-8550

*Electronically signed by:*

/s/ Clint B. Muche
CLINT B. MUCHE
Assistant City Attorney
State Bar No. 1131629
Email: cmuche@milwaukee.gov
TYLER M. HELSEL
Assistant City Attorney
State Bar No. 1103366
Email: tyhels@milwaukee.gov
JORDAN M. SCHETTLE
Assistant City Attorney
State Bar No. 1104571
Email: jschet@milwaukee.gov

*Attorneys for Defendants*